UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIS BERNARD SCOTT,<br><br>                              Petitioner,<br><br>v.<br><br>B. CATES, et al.,<br><br>                              Respondents. | Case No.:  22-cv-01101-RSH-JLB<br><br>**REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Petitioner Ellis Bernard Scott ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner challenges his 2018 conviction in San Diego Superior Court for assault with a deadly weapon.  (*Id.* at 1; ECF No. 13-1 at 211.)  This Report and Recommendation is submitted to the Honorable Robert S. Huie, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d).  For the reasons set forth below, the Court **RECOMMENDS** that the Petition be **DENIED**.

## I.    BACKGROUND

### A.    Procedural Background

On March 9, 2018, a San Diego Superior Court jury found Petitioner guilty of assault with a deadly weapon in violation of California Penal Code section 245(a)(1).  (ECF No.

13-1 at 257.) The jury also found that Petitioner personally used a dangerous and deadly weapon, a golf club, during the offense, within the meaning of California Penal Code section 1192.7(c)(23). (*Id.*) In a bifurcated proceeding, Petitioner admitted having suffered three prior strike convictions (Cal. Penal Code §§ 667(b)–(i), 668, 1170.12) and two prior serious felony convictions (Cal. Penal Code §§ 667(a)(1), 668, 1192.7(c)), and also admitted to having served three prior prison terms (Cal. Penal Code § 667.5(b)). (ECF No. 13-1 at 259, 261.) The trial court sentenced Petitioner to 25 years to life plus 10 years in state prison. (*Id.* at 211, 261.) Petitioner's sentence was comprised of 25 years to life pursuant to the Three Strikes law, plus two consecutive five-year terms for the prior serious felony enhancements. (*Id.*)

Petitioner appealed his conviction to the California Court of Appeal,[1] arguing that the prosecutor committed prosecutorial error during rebuttal closing argument by referring to evidence outside of the record, and that defense counsel provided ineffective assistance in failing to object to the prosecutor's argument. (ECF No. 13-11 at 16–29.) Petitioner also asked that the matter be remanded for a mental health diversion eligibility hearing under the retroactive application of the newly enacted California Penal Code section 1001.36 and for the trial court to determine whether to strike his two serious felony enhancements under California Penal Code section 667(a)(1) due to another retroactive change in the law. (*Id.* at 29–48.)

The Court of Appeal concluded that Petitioner had forfeited his claim of prosecutorial error by failing to timely object to the prosecutor's argument, and that Petitioner's related ineffective assistance of counsel claim failed for lack of prejudice. (ECF No. 13-13 at 2.) The appellate court further determined that Petitioner was entitled to a remand for further proceedings in the trial court given the two retroactive changes in the law. (*Id.* at 3.) The Court of Appeal therefore reversed the judgment and remanded

---

[1]    All references in this Order to the Court of Appeal refer to the California Court of Appeal.

the matter to the trial court with directions to conduct a mental health diversion eligibility hearing under California Penal Code section 1001.36. (*Id.*)  The appellate court directed the trial court to reinstate Petitioner's conviction and resentence him if it determined he was ineligible for diversion, or if the trial court placed Petitioner on diversion but he did not successfully complete diversion. (*Id.*)  During any resentencing proceedings, the trial court was directed to consider whether to exercise its discretion to strike either or both of the prior serious felony enhancements. (*Id.*)

Both Petitioner and the People filed petitions for review in the California Supreme Court. (ECF Nos. 13-14; 13-15.)  Petitioner's petition for review was filed for the purpose of exhausting state remedies for federal habeas corpus purposes pursuant to California Rule of Court 8.508. (ECF No. 13-14 at 6.)  In his petition, Petitioner reasserted his arguments of prosecutorial error and ineffective of assistance of counsel. (*Id.* at 13–23.)  On March 18, 2020, the California Supreme Court summarily denied Petitioner's petition for review. (ECF No. 13-15.)  The Supreme Court simultaneously granted the People's petition for review and deferred further action pending consideration and disposition of a related issue in *People v. Frahs*, No. S252220, the lead case before the high court on the issue of whether the new mental health diversion law (Cal. Penal Code § 1101.36) applied retroactively to defendants whose convictions were not yet final when the new law took effect. (*Id.*)  On June 18, 2020, the California Supreme Court issued its opinion in *Frahs*, holding that the provisions giving trial courts discretion to grant pretrial diversion for defendants (like Petitioner) with mental health disorders applied retroactively. *See People v. Frahs*, 9 Cal. 5th 618, 624 (2020).  Thereafter, on July 29, 2020, the California Supreme Court dismissed the People's petition for review. (ECF No. 13-16.) \

///
///
///
///
///

1    The Court of Appeal, in turn, issued remittitur on August 13, 2020, and remanded

2 Petitioner's case back to the trial court.[2]  On July 14, 2021, on remand, the trial court held

3 a hearing to determine whether Petitioner was eligible for mental health diversion and

4 concluded he was not eligible.  (ECF No. 18-1 at 3.)  On September 21, 2021, the trial court

5 struck two of Petitioner's prior strikes and his three prison priors, resentencing him to 18

6 years in prison.  (*Id.* at 1–2; *see also* ECF No. 18-3 at 12–13.)  An amended Abstract of

7 Judgment was issued the same day and forwarded to the California Department of

8 Corrections and Rehabilitation.  (*Id.*)  Petitioner did not appeal.

9    On July 10, 2022, Petitioner filed the instant Petition for Writ of Habeas Corpus.

10 (ECF No. 1.)[3]  The Petition asserts two grounds for relief: (1) the prosecutor committed

11 prosecutorial error during rebuttal closing argument by referring to evidence outside of the

12 record, and (2) defense counsel provided ineffective assistance in failing to object to the

13 prosecutor's argument.  (*Id.* at 6–7.)  On January 12, 2023, Respondent Brian Cates,

14

15

———————————

16    [2]    The Court takes judicial notice of the Court of Appeal docket in *People v.*

17 *Scott*, No. D074334, which indicates the appellate court issued remittitur on August 13,
2020.  *See People v. Scott*, No. D074334, Appellate Courts Case Information,

18 https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=41&doc_id=225791

19 7&doc_no=D074334&request_token=NiIwLSEmLkw5W1BVSSFdXEtJUDw6UkxbJC
NeSzlSMCAgCg%3D%3D [https://perma.cc/LX7R-4SVS].  *See also* Fed. R. Evid. 201(b)

20 ("The court may judicially notice a fact that is not subject to reasonable dispute because it:

21 (1) is generally known within the trial court's territorial jurisdiction; or (2) can be
accurately and readily determined from sources whose accuracy cannot reasonably be

22 questioned"); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) (taking judicial

23 notice of court dockets in state court proceedings).  Under California law, remittitur is the
final step in the appellate process and consists of remitting the certificate of judgment to

24 the court below.  *See* Cal. Penal Code § 1265(a); Cal. R. Ct. 8.272.

25    [3]    The petition was docketed on July 25, 2022.  (*See* ECF No. 1.)  Under the
"mailbox rule," a federal habeas petition is deemed filed at the moment the prisoner

26 delivers it to prison authorities for forwarding to the clerk of the court.  *Stillman v.*

27 *LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).  In this case, that was July 10, 2022, when
Petitioner signed a certification that he handed the petition to prison staff for mailing.  (*See*

28 ECF No. 1 at 11–12.)

4

Warden of California Correctional Institution, Tehachapi of the California Department of Corrections and Rehabilitation ("Respondent"), moved to dismiss the Petition as barred by the one-year statute of limitations period set forth in 28 U.S.C. § 2244(d)(1). (ECF No. 12.) Respondent filed a Notice of Lodgment and Supplemental Notice of Lodgment in support of his motion. (ECF Nos. 13, 18.) On July 27, 2023, Judge Huie issued an Order Denying Respondent's Motion to Dismiss. (ECF No. 19.) On September 25, 2023, Respondent filed an Answer. (ECF No. 22.) Petitioner did not file a Traverse.[4]

### B.    Factual Background

The Court takes the following underlying statement of facts from the Court of Appeal's opinion in *People v. Scott*, No. D074334, slip. op. (Cal. Ct. App. Jan. 7, 2020). (ECF No. 13-13.)[5]

#### A.    *The People's evidence*

One summer afternoon in 2017, the victim, who was homeless, was at a park in City Heights. The victim was seated on the ground next to several other people. On the ground, next to the victim, was a golf club that the victim had brought to the park. The victim testified that he brought the golf club to the park because he intended to use it to threaten an individual who had been "messing with [his] sister."

[Petitioner], who also was at the park, walked up to the group and approached the victim. [Petitioner] picked up the golf club. Seconds later, [Petitioner] swung the club and struck the victim in the head. [Petitioner] then swung the club at the victim a second time, striking the victim in the face and

---

[4]    Petitioner's Traverse was initially due November 6, 2023. (ECF No. 21.) However, the Court's order setting that deadline was returned as undeliverable on September 25, 2023. (ECF No. 23.) On November 16, 2023, the Court received an updated address for Petitioner and reset the deadline to file a Traverse to no later than December 26, 2023. (ECF No. 24.) No further filings have been submitted.

[5]    A state court's findings of fact are presumed to be correct unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008). Here, Petitioner has not attempted to overcome the presumption with respect to the underlying events.

on his arms.  The victim had not said or done anything to [Petitioner] prior to being hit.

A security guard at a recreation center located in the park saw [Petitioner] strike the victim with the golf club.  The security guard called 911.  After striking the victim, [Petitioner] was "ranting and raving" and appeared to be angry and upset.  The guard did not see the victim acting aggressively either before or after being struck with the club.  Police arrived at the scene minutes later and detained [Petitioner].

Surveillance video of the incident was shown to the jury.

B.    *The defense*

[Petitioner's] former girlfriend, Maria Perez, testified that she was with [Petitioner] at the park on the day of the incident.  [Petitioner] went near the restrooms.  While [Petitioner] was near the restrooms, several people, including the victim, directed racial epithets at [Petitioner].  Perez saw two people throw punches at [Petitioner].

[Petitioner] testified that he was at the park on the day of the charged offenses and that he went to use the restroom at the park.  As he approached the restroom, he was confronted by several men, including the victim.  According to [Petitioner], the victim swung his fist at [Petitioner], who backed away quickly.  Another man with a tattoo indicating his affinity for white supremacy asked [Petitioner], "What's up now, motherfucker?"  [Petitioner] backed out of the bathroom.

A few minutes later, [Petitioner] approached the men with whom he had the encounter by the restroom.  The men continued to insult [Petitioner].  According to [Petitioner], as he walked by, someone said, "Get his ass now."  [Petitioner] thought that the victim was going to grab the golf club and hit [Petitioner] with it.  Fearing an attack, [Petitioner] grabbed the club and struck the victim with the club.

(ECF No. 13-13 at 4–5 (footnote omitted).)

///

///

///

///

///

## II.    LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant a habeas corpus petition on behalf of a person in state custody if the adjudication of the claim on the merits in State court proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2); *see also Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) ("'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.") (citing *Williams v. Taylor*, 529 U.S. 362, 405, 413 (2000)).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams*, 529 U.S. at 405–06.  A state court decision may involve an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.  In order to satisfy § 2254(d)(2), the factual findings relied upon by the state court must be objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## III.    DISCUSSION

### A.    Claim 1: Prosecutorial Misconduct

#### 1.    Parties' Arguments

In Claim 1, Petitioner argues that the prosecutor committed prosecutorial misconduct during her closing argument by referring to facts outside the record.  (ECF No. 1 at 6.)  Petitioner argues that, in doing so, the prosecutor undermined Petitioner's

credibility, thereby tainting the jury's deliberations pertaining to Petitioner's self-defense claim. (*Id.*)

In his Answer, Respondent argues that Petitioner's claim of prosecutorial misconduct is procedurally barred by California's contemporaneous objection rule, *i.e.*, defense counsel's failure to object at trial, and that Petitioner has failed to show cause or prejudice to excuse the procedural bar. (ECF No. 22-1 at 7, 12–19.)

> 2.   <u>Relevant Facts</u>

During closing argument, defense counsel argued that Petitioner was entitled to stand his ground and use self-defense. (ECF No. 13-7 at 201.)  Defense counsel argued:

> The fact that [Petitioner] didn't, you know, leave the park after this happened and was cooperative with the police is also circumstantial evidence that he was using self-defense.
>
> I mean, if he had really just randomly, or purposefully, decided that he was going to take out [the victim], then why would he stay around?  Everyone knows there's a police station directly across the street.  It's only going to take [a] minute or two for them to respond.  If you actually are swinging this club maniacally at someone to injure them and you have no legal excuse for doing so, you're not going to stick around and wait for the police to come.  You're going to take off.
>
> That's not what [Petitioner] did.  Again, that's circumstantial evidence that he was acting in self-defense.

(*Id.* at 202.)

During her rebuttal closing argument, the prosecutor responded to defense counsel's argument:

> [] You know, and Counsel was getting up here and saying, "Well, yeah, he stayed at the park so that shows he knew it was self-defense."  No.
>
> Also look at—*first of all, people do that all the time.  That's how the cops catch people.*

1    Beyond that, what—how reasonable is the evidence with his testimony?
2    That he's claiming that he is so scared that they're going to kill him—look at
     his body language. Is he acting like someone that's scared?

3
4    Is it reasonable for someone who was truly threatened, who is truly
     fearful for their life, to just hang out? That's not reasonable. That's not
5    reasonable because he was not in danger. He was not being threatened. His
6    behavior is inconsistent with someone who is fearful for their life.

7    (*Id.* at 218–19 (emphasis added).)

8              3.    <u>Court of Appeal Decision</u>

9         Federal courts, on habeas review, "look through unexplained state court decisions

10   leaving, in effect, the denial of post-conviction relief to the last reasoned state court

11   decision to address the claim at issue." *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.

12   2007) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804–06 (1991)). In this case, the Court of

13   Appeal provided the last reasoned decision on the merits of Petitioner's claims. (*See* ECF

14   No. 13-13.)  In its decision, the Court of Appeal analyzed Petitioner's claim of

15   prosecutorial error as follows:

16
17         [Petitioner] contends that the italicized portion of the prosecutor's
     rebuttal argument quoted [above] constituted prosecutorial error because there
18   was no evidence in the record supporting the prosecutor's statements.

19         a.    *Substantive law*

20         "The use of deceptive or reprehensible methods to persuade the jury
21   constitutes [prosecutorial] misconduct."  [Footnote omitted.] (*People v.
     Sanchez* (2016) 63 Cal. 4th 411, 475.) """A prosecutor's misconduct violates
22   the Fourteenth Amendment to the United States Constitution when it 'infects
23   the trial with such unfairness as to make the conviction a denial of due
     process.' [Citations.] In other words, the misconduct must be 'of sufficient
24   significance to result in the denial of the defendant's right to a fair trial.'
     [Citation.]  A prosecutor's misconduct that does not render a trial
25   fundamentally unfair nevertheless violates California law if it involves 'the
26   use of deceptive or reprehensible methods to attempt to persuade either the
     court or the jury.'"""  (*People v. Covarrubias* (2016) 1 Cal. 5th 838, 894.)
27

28

9

""""[S]tatements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct."""" (*People v. Rivera* (2019) 7 Cal. 5th 306, 382 (*Rivera*).)

### b.    *Forfeiture*

In *People v. Forrest* (2017) 7 Cal. App. 5th 1074, 1081, the Court of Appeal discussed well-established law regarding what a defendant must do in order to preserve a claim of prosecutorial error for appellate review:

> "To preserve a misconduct claim for review on appeal, "'a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument.'" The underlying purpose of this requirement is to """"encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ."""" 'The objection requirement is necessary in criminal cases because a "contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.""""

A claim of prosecutorial error is reviewable on appeal notwithstanding the lack of a timely objection if an admonition would not have cured the harm resulting from the prosecutor's remarks. (See, e.g., *People v. Cunningham* (2001) 25 Cal. 4th at pp. 1000–1001.)

### c.    *Application*

Defense counsel made no objection at trial to the portion of the prosecutor's rebuttal argument that [Petitioner] challenges on appeal, and [Petitioner] does not contend on appeal that the asserted prosecutorial error could not have been cured by an admonition.

[Petitioner] requests that we exercise our discretion to consider his unpreserved claim because his contention is "important" and provides "a textbook case" of misconduct. He also argues that we should review his unpreserved claim because he received a lengthy prison sentence under the Three Strikes law. Neither of [Petitioner's] arguments provides a compelling basis for excusing [Petitioner's] forfeiture and we decline to exercise our

discretion to consider [Petitioner's] claim on appeal.[6]  However, we address below [Petitioner's] related claim that his counsel rendered ineffective assistance in failing to object to the prosecutor's rebuttal closing argument.

(ECF No. 13-13 at 7–9.)

### 4.    Analysis

#### i.    Procedural Bar

##### a.    Legal Standard

Federal courts "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989) (quoting *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)); *see also Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) ("As to the role of adequate and independent state grounds, it is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts.").  The state holds the burden of proving the existence of an independent and adequate state procedural ground.  *See Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003).  Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden shifts to the petitioner to assert "specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* at 586.  However, the ultimate burden of proving procedural default belongs to the state.  *Id.*

///

---

6  [footnote in original] If we were to exercise our discretion to consider [Petitioner's] claim, we would conclude that the prosecutorial error of which [Petitioner] complains was harmless, for the reasons outlined in connection with our rejection of [Petitioner's] related ineffective assistance claim.

1   "For a state procedural rule to be 'independent,' the state law basis for the decision

2   must not be interwoven with federal law." *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th

3   Cir. 2001) (citation omitted).  "A state law ground is so interwoven if 'the state has made

4   application of the procedural bar depend on an antecedent ruling on federal law [such as]

5   the determination of whether federal constitutional error has been committed.'"  *Id.*

6   (quoting *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000)).  For a state procedural

7   rule to be adequate, it "must have been 'firmly established and regularly followed' by the

8   time as of which it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424 (1991) (quoting

9   *James v. Kentucky*, 466 U.S. 341, 348–49 (1984)); *see also Fields v. Calderon*, 125 F.3d

10  757, 760 (9th Cir. 1997).  If a federal court concludes that an asserted state procedural bar

11  was not an independent and adequate ground for the state court decision, the federal court

12  must consider the claim on the merits; if the state court never reached the merits of the

13  claim, the federal court reviews the claim de novo.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167–

14  68 (9th Cir. 2002).

15      Where a state petitioner has defaulted on federal claims in state court pursuant to an

16  independent and adequate state procedural rule, federal habeas review of the claims is

17  barred unless the petitioner can show cause for the default and actual prejudice because of

18  the alleged violation of federal law.  *United States v. Frady*, 456 U.S. 152, 167–68 (1982)

19  (citing *Davis v. United States*, 411 U.S. 233 (1973)) ("[T]o obtain collateral relief based on

20  trial errors to which no contemporaneous objection was made, a convicted defendant must

21  show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice'

22  resulting from the errors of which he complains."); *see also Sykes*, 433 U.S. at 84.

23      Cause "must be something *external* to the petitioner."  *Coleman v. Thompson*, 501

24  U.S. 722, 753 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).  "[I]f the

25  procedural default is the result of ineffective assistance of counsel, the Sixth Amendment

26  itself requires that responsibility for the default be imputed to the State," thus establishing

27  cause to excuse the default.  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986));

28  *see also Loveland v. Hatcher*, 231 F.3d 640, 644 (9th Cir. 2000) ("The lack of effective

assistance of counsel, as provided for by the Sixth Amendment, can be sufficient cause for a failure to comply with a state's procedural bar rule."). "[I]t is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor . . . ." *Id.* at 754.

To establish cause based on ineffective assistance of counsel, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . and the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Regarding a counsel's failure to object during closing argument, the Ninth Circuit has indicated that "[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)).

To show "actual prejudice," a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original); *see also Fauber v. Davis*, 43 F.4th 987, 1003 (9th Cir. 2022).

A petitioner may also overcome the procedural bar by demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Murray*, 477 U.S. at 496. A "fundamental miscarriage of justice" occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (stating that *Murray* "explicitly tied the miscarriage of justice exception to the petitioner's innocence").

///

///

### b.    Analysis

Respondent argues that Petitioner's prosecutorial misconduct claim is procedurally barred by California's contemporaneous objection rule.  (ECF No. 22-1 at 12–14.)  As the Court of Appeal stated, "[t]o preserve a misconduct claim for review on appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument."  (ECF No. 13-3 at 8 (quoting *People v. Forrest*, 7 Cal. App. 5th 1074, 1081 (2017) (internal quotation marks omitted).)  Because defense counsel did not object at the time of the alleged prosecutorial misconduct during trial, the court concluded Petitioner's claims were forfeited.  (*Id.* at 2, 9.)

The Ninth Circuit has recognized California's contemporaneous objection rule as an independent and adequate basis for denial of a petition for habeas corpus, thus precluding federal review of such a claim.  *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) (finding claim was procedurally barred from habeas review where state court found that petitioner failed to object at trial); *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004) (finding claim procedurally defaulted based on California's contemporaneous objection rule).  Thus, Respondent has satisfied his initial burden of pleading the existence of an independent and adequate state procedural ground.  *Bennett*, 322 F.3d at 586.  The burden then shifts to Petitioner to "place [Respondent's affirmative defense] in issue . . . by asserting factual allegations that demonstrate the inadequacy of the state procedure, including . . . inconsistent application of the rule."  *Id.*; *see also King v. LaMarque*, 464 F.3d 963, 966–67 (9th Cir. 2006) (shifting the burden to the petitioner after the state satisfied its burden of pleading the existence of an independent and adequate state procedural ground).

Petitioner has failed to do so here.  (*See generally* ECF No. 1.)  In his Petition, Petitioner raises no specific factual allegations demonstrating the inadequacy of the state procedure and provides no citation to authority demonstrating inconsistent application of the contemporaneous objection rule.  *See Bennett*, 322 F.3d at 586; *cf. Roybal v. Davis*, 148 F. Supp. 3d 958, 988 (S.D. Cal. 2015) ("Given Petitioner's argument and citation to

14

22-cv-01101-RSH-JLB

authority showing the [state] rule has been applied inconsistently, the Court finds that Petitioner has satisfied the 'burden to place that defense in issue.'" (quoting *Bennett*, 322 F.3d at 586)). Therefore, the Court finds that Petitioner failed to satisfy his burden of challenging the independence or adequacy of the state procedural bar, and his claim for prosecutorial misconduct is procedurally defaulted. *See Bennett*, 322 F.3d at 586; *see also Young v. Gipson*, 163 F. Supp. 3d 647, 679 (N.D. Cal. 2015) (finding a claim for prosecutorial misconduct to be procedurally defaulted after concluding the contemporaneous objection rule is sufficiently independent and adequate).

As set forth above, a federal habeas court may still address the merits of a procedurally defaulted claim if the petitioner can demonstrate cause for his failure to satisfy the state procedural rule and prejudice arising from the default or demonstrate that failure to consider his claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 749–50. Petitioner has not done so here.

First, Petitioner has not established cause for the procedural default. While he alleges his trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct, as set forth in the discussion of Claim 2 below, Petitioner has not established that his trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 669 (a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" to establish ineffective assistance of counsel).

Generally, a failure to object during closing arguments does not constitute deficient performance. *See Necoechea*, 986 F.2d at 1281 ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." (quoting *Strickland*, 466 U.S. at 689)); *Cunningham*, 704 F.3d at 1159 ("Under *Necoechea*, [counsel's] decision not to object to [the prosecutor's] comments, possibly to avoid highlighting them, was a reasonable strategic decision.").

In this case, the prosecutor's comment, "People do that [i.e., remain on the scene] all the time. That's how the cops catch people," was a brief, two-sentence remark, and does not rise to a level of egregiousness such that reasonable counsel would necessarily object. (*See* ECF No. 13-7 at 218.) Defense counsel's failure to object to the prosecutor's remarks could reasonably be considered a strategic trial decision to avoid highlighting the comments. *See Cunningham*, 704 F.3d at 1159. This is particularly true here, where the prosecutor's isolated comment was made in response to the defense assertion in closing argument, "I mean, if he had really just randomly, or purposefully, decided that he was going to take out [the victim], then why would he stay around? Everyone knows there's a police station directly across the street. It's only going to take [a] minute or two for them to respond." (ECF No. 13-7 at 202.) The factual assertion that "everyone knows" there was a police station across the street was similarly unsupported by evidence in the record. Defense counsel may not have wanted to highlight this fact by objecting to the prosecution's counter argument. Accordingly, Petitioner has failed to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and thus fails to show cause for the procedural default. *Strickland*, 466 U.S. at 687.

Second, even assuming Petitioner could establish cause, he has not established actual prejudice sufficient to excuse the procedurally barred claims. *See Vansickel v. White,* 166 F.3d 953, 958 (9th Cir. 1999) ("[E]ven if [defense counsel's conduct constituted cause], we hold that [the petitioner] cannot establish prejudice because there is no reasonable probability that but for counsel's error, the result of the trial would have been different."). The evidence in this case was clearly sufficient for the jury to find Petitioner guilty, independent of the prosecutor's remark at issue. As the Court of Appeal observed, "The People presented compelling, if not overwhelming, evidence of [Petitioner's] guilt." (ECF No. 13-13 at 12.)

Lastly, Petitioner has not established that failure to consider the claim would result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. The fundamental

miscarriage of justice exception to a procedural default is intended to apply only in extraordinary cases when a constitutional violation results in the conviction of an innocent person. *Schlup*, 513 U.S. at 327 (citing *Murray*, 477 U.S. at 496). To establish this exception, the petitioner "is required to make a stronger showing than that needed to establish prejudice." *Id.* In this case, as found by the Court of Appeal, there is "compelling evidence of [Petitioner's] guilt, including video evidence of the incident, eyewitness testimony, and inconsistencies in defense witnesses's statements." (ECF No. 13-13 at 11.) Further, Petitioner does not argue that failure to consider the claim would result in a fundamental miscarriage of justice and has failed to demonstrate the constitutional violation resulted in the conviction of an innocent person. (*See generally* ECF No. 1.) Thus, Petitioner cannot excuse his procedural default under the fundamental miscarriage of justice exception.

### c.    Conclusion

For the foregoing reasons, federal habeas review of Petitioner's claim for prosecutorial misconduct is barred because Petitioner failed to show cause for his default and actual prejudice resulting from the default, or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749–50.

### ii.    Merits of Prosecutorial Misconduct Claim

Notwithstanding the procedural bar, the Court now turns to the merits of Petitioner's prosecutorial misconduct claim. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar."); *Young*, 163 F. Supp. 3d at 679 (addressing the merits of the case after finding the underlying claim for prosecutorial misconduct procedurally defaulted).

### a.    Legal Standard

A prosecutor's misconduct violates a criminal defendant's due process rights when such conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  The court focuses on the fairness of a trial, not the culpability of the prosecutor.  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In this due process inquiry, the court considers, *inter alia*, "(1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused."  *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005); *see also Darden*, 477 U.S. at 180–82.  The prosecutor's remarks must be weighed in the context of the entire proceeding.  *Darden*, 477 U.S. at 179–82.  Additionally, because

> improvisation [during a closing argument] frequently results in syntax left imperfect and meaning less than crystal clear[,] . . . a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

*Donnelly*, 416 U.S. at 647.  If prosecutorial misconduct is established, and it was constitutional error, the court must decide whether the constitutional error was harmless.  *Thompson*, 74 F.3d at 1576–77.

### b.    Analysis

In addition to finding that Petitioner's prosecutorial misconduct claim was procedurally defaulted, the Court of Appeal found that the claim failed on the merits.  (*See* ECF No. 13-13 at 9 n.6 ("If we were to exercise our discretion to consider [Petitioner's] claim, we would conclude that the prosecutorial error of which [Petitioner] complains was harmless, for the reasons outlined in connection with our rejection of [Petitioner's] related ineffective assistance claim.").  The Court finds that the appellate court's determination was neither contrary to, nor an objectively unreasonable application of, clearly established federal law.

Assuming, *arguendo*, that the prosecutor's remark that "people do that [*i.e.*, remain at crime scenes] all the time," was inappropriate because there was no evidence in the

record regarding this issue,[7] it cannot be said that the comment rendered the trial fundamentally unfair so as to deny Petitioner due process.[8]  (*See* ECF No. 13-7 at 218.) The prosecutor's objectionable comment was brief, a very small portion of the argument, and made in response to defense counsel's argument that Petitioner must have acted in self-defense because he stayed at the park after the incident even though "everyone knows there's a police station directly across the street." (*See* ECF No. 13-7 at 202.)  As the Court of Appeal noted, the prosecutor's statement was a "brief and isolated remark" made only once throughout the entire closing argument.[9]  (*See* ECF No. 13-13 at 11.)

Additionally, the statements did not play a prominent role in Petitioner's trial, but rather were just two short sentences during a rebuttal closing argument that took up just fourteen pages of transcript.[10]  (*See* ECF No. 13-7 at 209–23.)  As the Court of Appeal observed, "The remainder of the prosecutor's opening and rebuttal closing arguments focused on the compelling evidence of [Petitioner's] guilt, including video evidence of the incident, eyewitness testimony, and inconsistencies in defense witnesses's statements." (ECF No. 13-13 at 11.)

///

---

[7]     *See Berger v. United States*, 295 U.S. 78, 84 (1935) (finding it was improper for the prosecutor to assume prejudicial facts not in evidence); *Baldwin v. Adams*, 899 F. Supp. 2d 889, 915 (N.D. Cal. 2012) (finding it was improper for the prosecutor to argue facts not in evidence).

[8]     *See Darden*, 477 U.S. at 181.

[9]     *See Hein v. Sullivan*, 601 F.3d 897, 916 (9th Cir. 2010*)* (considering the fact the prosecutor's "comment did not pervade the proceedings and was not emphasized" in finding that it did not render the trial fundamentally unfair).

[10]    *See Trillo v. Biter*, 769 F.3d 995, 1002 (9th Cir. 2014) (noting that "[t]he erroneous unrectified comment did not play a prominent role in [the defendant]'s trial, but instead was a single statement during a closing argument that took twenty pages of transcript after a long criminal trial" in finding the defendant was not deprived of a fair trial); *Hein*, 601 F.3d at 916 (considering the fact that the "[prosecutor]'s statement . . . appeared in one paragraph of a summation that took up eighty-four pages of the transcript" in finding the prosecutor's summation did not render the trial fundamentally unfair).

1    Furthermore, the trial court instructed jurors to make their decision based on the
2    evidence presented, and that counsels' arguments were not evidence. (*See* ECF No. 13-7
3    at 169–70.)  The trial court's instruction further reduced the likelihood the jury's decision
4    was influenced by the brief comment made in the rebuttal argument. *See Darden*, 477 U.S.
5    at 182 (considering the fact that the "trial court instructed the jurors several times that their
6    decision was to be made on the basis of the evidence alone, and that the arguments of
7    counsel were not evidence" in finding the petitioner was not deprived of a fair trial); *Tak*
8    *Sun Tan*, 413 F.3d at 1117–18 (finding that even if the prosecutor's statements were
9    improper, "the trial court's numerous and thorough instructions eliminated any risk that the
10   petitioners were denied due process"); *Allen v. Woodford*, 395 F.3d 979, 998 (9th Cir.
11   2005) ("[T]he prosecutor's [statement] was misconduct.  However, given the trial court's
12   instruction that statements by counsel were not evidence, and given the weight of the
13   evidence against him, the prosecutor's comments did not deprive [the petitioner] of a fair
14   trial.").

15        Lastly, a court must look to the weight of the evidence submitted against the
16   petitioner, including eyewitness and circumstantial evidence. *See id.* at 181–82; *see also*
17   *Trillo*, 769 F.3d at 1001.  In this case, there was ample evidence of Petitioner's guilt.  As
18   the Court of Appeal found, there was "compelling evidence of [Petitioner's] guilt,
19   including video evidence of the incident, eyewitness testimony, and inconsistencies in
20   defense witnesses's statements." (ECF No. 13-13 at 11.)

21        Ultimately, even if the prosecutor's remarks were improper because they stated facts
22   outside the record, there is no basis by which to conclude that the remarks rendered the
23   trial as a whole fundamentally unfair. *See Hovey v. Ayers*, 458 F.3d 892, 921 (9th Cir.
24   2006) ("Even if the prosecution's actions were inappropriate, they do not rise to the level
25   of a due process violation that merits reversal of [the petitioner]'s conviction.").

26                      c.    Conclusion

27        Based on the foregoing, the state court's adjudication of Petitioner's prosecutorial
28   misconduct claim is neither contrary to, nor an unreasonable application of, clearly

established federal law, nor is there any basis to find it is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the Court **RECOMMENDS** that habeas relief be denied as to Claim 1.

**B.    Claim 2: Ineffective Assistance of Counsel**

    1.    Parties' Arguments

In Claim 2, Petitioner argues that his trial counsel provided ineffective assistance under the Sixth and Fourteenth Amendments for failing to object to the prosecutor's alleged misconduct.  (ECF No. 1 at 7.)  He contends that there is a reasonable probability that his counsel's error affected the outcome of his trial because the prosecutor in his prior trial, which resulted in a hung jury, did not rely on facts outside of the evidence.  (*Id.*)  Respondent counters that Petitioner has failed to establish that the state court's resolution of his claims was contrary to, or based on an unreasonable application, of clearly established Supreme Court authority.  (ECF No. 22-1 at 7, 19–26.)

    2.    Court of Appeal Decision

In its decision, the Court of Appeal analyzed Petitioner's claim of ineffective assistance of counsel as follows:

> [Petitioner] claims that defense counsel rendered ineffective assistance in failing to object to the prosecutor's rebuttal closing argument quoted [above].

>     a.    *Relevant law governing ineffective assistance of counsel claims*

> To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness," evaluated "under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*); accord, *People v. Ledesma* (1987) 43 Cal. 3d 171, 216.)  The defendant must also show that it is reasonably probable that a more favorable result would have been reached absent counsel's deficient performance. (*Strickland*, *supra*, at p. 694.)

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland*, *supra*, 466 U.S. at p. 697.)

      b.   *Application*

The prosecutor's remark that "people do that [i.e., remain at crime scenes] all the time," was improper because there was no evidence in the record with respect to this issue. (See *Rivera*, *supra*, 7 Cal. 5th at p. 335 [improper for prosecutor to make """statement[ ] of facts not in evidence"""].)

However, we need not determine whether defense counsel rendered ineffective assistance in failing to object to the prosecutor's remark because we conclude that it is not reasonably probable that [Petitioner] would have achieved a more favorable result even if defense counsel had objected. (See *Strickland*, *supra*, 466 U.S. at p. 697 [claims of ineffective assistance of counsel fail in the absence of a showing of prejudice].)

To begin with, the prosecutor's statement was a "brief and isolated remark," (*People v. Cudjo* (1993) 6 Cal. 4th 585, 626.) The remainder of the prosecutor's opening and rebuttal closing arguments focused on the compelling evidence of [Petitioner's] guilt, including video evidence of the incident, eyewitness testimony, and inconsistencies in defense witnesses's statements. Further, the argument to which the prosecutor was responding— i.e., defense counsel's contention that the fact that [Petitioner] remained at the scene constituted circumstantial evidence that [Petitioner] had acted in self-defense—was a very minor portion of defense counsel's closing argument.

Further, the trial court instructed the jury as follows: "Nothing that the attorneys say is evidence. In their opening and closing arguments, the attorneys discuss the case, their remarks are not evidence." The court also instructed the jury that it was to decide the case "only on the evidence that has been presented to you in this trial." Since we "presume the jury followed these instructions," (*People v. Avila* (2009) 46 Cal. 4th 680, 719), such instructions mitigated any potential for prejudice stemming from the prosecutor's remarks. (*Ibid.* [rejecting claim of prosecutorial error premised on prosecutor's argument "not supported by any facts in the record," in part because jury was instructed that "'[s]tatements made by the attorneys during the trial are not evidence'"].)

In addition to the fact that the prosecutor's brief remark was a very minor part of the trial, an assessment of the remainder of the trial supports the conclusion that [Petitioner] has failed to establish prejudice from defense counsel's failure to object to the remark. While [Petitioner] contends that this was a "close case," the record belies that contention. The People presented compelling, if not overwhelming, evidence of [Petitioner's] guilt.

To begin with, at trial, the People played for the jury extremely inculpatory video evidence of [Petitioner] committing the charged offense. People's Exhibit 3 is an approximately 33-second-long video clip showing [Petitioner] striking the victim with the golf club. In the video, a man, later determined to be [Petitioner], walks over to a group of people at a park. The victim is sitting on the ground with a group of people. [Petitioner] reaches down and picks up an object, later determined to be a golf club. [Petitioner] aggressively hits the victim on the back of the head or neck area with the golf club. Seconds later, with the victim still on the ground, [Petitioner] hits the victim with the club a second time. People from the victim's group start to hurriedly walk and run away.

People's Exhibit 2 is an approximately eight-minute-long video clip depicting approximately two and a half minutes before the commission of the charged offense, and approximately five and a half minutes after its commission. For the entire two and a half minutes before [Petitioner] hits the victim in the back of the head with a golf club, the victim is seated on the grass. Approximately twenty seconds before the beating, [Petitioner] walks over to the victim's group. [Petitioner] circles around the group briefly before picking up the golf club and striking the victim with it. After the beating, Perez runs to [Petitioner]. Perez appears to attempt to restrain [Petitioner]. Several individuals who had been near the victim at the time of the beating begin to walk or run away from the area. [Petitioner] briefly walks toward these individuals. Approximately 45 seconds after hitting the victim twice with the golf club, [Petitioner] returns to the victim, who is now standing. [Petitioner] appears to hit the victim in the face with his hand or fist. [Petitioner] can then be seen walking around the park until police arrive at the scene approximately five and a half minutes after the offense.

In addition to this video evidence, the victim and another eyewitness both testified that [Petitioner's] beating of the victim with a golf club was unprovoked. [Petitioner] acknowledged at trial that he had hit the victim with a golf club.

Further, we agree with the People that [Petitioner's] testimony that he acted in self-defense after being assaulted by the victim near the restroom in the park a few minutes before he struck the victim with a golf club lacked credibility, for numerous reasons.  To begin with, [Petitioner] did not tell police about the alleged incident in the restroom on the day of the charged offenses, either at the scene or during an interview at the police station.  When asked at trial whether this would have been important information to tell the police, [Petitioner] responded, "Yes. If I was a snitch, yes."  Yet, [Petitioner] admitted at trial that he *did* tell police that the victim had allegedly swung the golf club at him.  During his testimony at trial, [Petitioner] acknowledged that the victim had *not* in fact swung the golf club at him.  Further, even assuming that the jury were to have believed [Petitioner's] testimony about the alleged assault in the restroom, a reasonable juror would not have found that [Petitioner's] act in beating the victim with a golf club during a separate incident several minutes later constituted self-defense.

To that end, we disagree with [Petitioner's] assertion that "the surveillance video did not corroborate or contradict [Petitioner's] self-defense claim."  The jury was instructed that, in order for [Petitioner] to have acted in self-defense, he had to have believed that he was in "imminent danger," and that the "immediate use of force was necessary to defend against that danger."  In addition, he must have used "no more force than was reasonably necessary."  The jury was also instructed that the "[r]ight to use force in self-defense continues only as long as the danger exists, or reasonably appears to exist."  Thus, even assuming, strictly for the purpose of argument, that the jury believed [Petitioner's] testimony that the victim had attempted to punch him in the restroom, it is not reasonably probable that the jury would have found that [Petitioner] acted in self-defense in approaching the seated victim several minutes *after* the alleged restroom incident, picking up a golf club, violently striking the seated victim in the back of the head with the golf club, and striking the victim in the head with the club a second time.

We are not persuaded that Perez's former testimony in which Perez testified that [Petitioner] had been assaulted near the park restroom prior to [Petitioner's] use of the golf club, supports a finding of prejudice.  The People called a defense investigator as a witness at this trial.  The investigator testified that Perez had told him that the victim and [Petitioner] began to hit each other just before [Petitioner] swung a golf club at the victim.  The investigator also testified that Perez had never told him about a separate incident between [Petitioner] and the victim occurring near the park restroom.  The description of the incident that Perez related to the investigator was inconsistent with her

former testimony and was contrary to video evidence that was shown to the jury. Further, as with [Petitioner's] testimony, even if the jury believed that Perez had been truthful in testifying that [Petitioner] was assaulted near the park restroom several minutes before he attacked the victim, the jury was unlikely to find that [Petitioner's] later act in beating the seated victim in the back of the head with a golf club constituted self-defense.

Thus, while we agree with [Petitioner] that the jury was required to make a "credibility determination[]," it is clear that the jury determined that [Petitioner's] testimony was not credible. In light of the evidence discussed above, it is not reasonably probable that the jury would have reached a different determination as to [Petitioner's] credibility if defense counsel had objected to the prosecutor's remark.

Finally, we are unpersuaded by [Petitioner's] claim that prejudice is demonstrated by the fact that the jury in a prior trial was unable to reach a verdict. [Petitioner] fails to demonstrate that the evidence presented at the two trials was materially similar. In fact, the evidence presented at the trials was materially *different*, since *neither* [Petitioner] *nor* the victim testified at the prior trial. Accordingly, the fact that the prior jury was unable to reach a verdict does not demonstrate prejudice resulting from defense counsel's failure to object to the prosecutor's remark in rebuttal closing argument. (See *In re Richards* (2016) 63 Cal. 4th 291, 316 (conc. opn. by Corrigan, J.) ["Particularly when the split is 11 to one,[11] as it was in the second trial here, the disagreement may be driven as much by the personality of a juror, a uniquely held world view, or even some friction during deliberations, as by any weakness in the underlying case"].)

Accordingly, we conclude that [Petitioner] has not demonstrated that he suffered prejudice as a result of defense counsel's failure to object to the prosecutor's statement in his rebuttal closing argument, and that he has therefore failed to establish a claim of ineffective assistance of counsel.

(ECF No. 13-13 at 9–17 (footnotes other than footnote 15 omitted).

///

///

---

[11] [footnote in original] The record from the prior trial indicates that the jury was split 11-1 in the prior case, with eleven jurors favoring a verdict of guilt.

3.   <u>Analysis</u>

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland*, 466 U.S. at 685–86.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.  To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Id.* at 687.

"The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The rule of *Strickland* requires the court to view defense counsel's effectiveness with great deference. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  This, coupled with AEDPA's requirement that federal courts defer to the state court's decision unless its application of Supreme Court precedent was objectively unreasonable, results in a "doubly deferential" judicial review process.  *See id.*; *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).  "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

i.   *Deficient Performance*

a.   Legal Standard

To prove deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  "Judicial scrutiny of counsel's performance must be highly deferential," and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689.  Reviewing courts "must indulge a strong

presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)).

### b.    Application

The Court of Appeal did not evaluate whether Petitioner's trial counsel's failure to object to the prosecutor's remark during rebuttal closing argument constituted deficient performance. (*See* ECF No. 13-13 at 10–11 ("However, we need not determine whether defense counsel rendered ineffective assistance in failing to object to the prosecutor's remark because we conclude that it is not reasonably probable that [Petitioner] would have achieved a more favorable result even if defense counsel had objected.") (citing *Strickland*, 466 U.S. at 697).) The Court must therefore review de novo whether defense counsel's performance constituted deficient performance. *See Ross v. Davis*, 29 F.4th 1028, 1054 (9th Cir. 2022) ("Because the issue of deficient performance was left unadjudicated by the California Supreme Court, we review this issue de novo.").

The prosecutor in this case made one improper statement, consisting of two sentences, in response to defense counsel's self-defense argument. (*See* ECF No. 13-7 at 218.) The assertion that people remain on the scene "all the time" was not supported by testimony, but would likely be construed by the jury, at most, as an appeal to their common sense. As addressed above, the comments did not rise to the level of "egregious misstatements" to which counsel must object. In the context of closing arguments, "absent egregious misstatements, the failure to object during closing argument . . . is within the 'wide range' of permissible professional legal conduct." *Necoechea*, 986 F.2d at 1281 (quoting *Strickland*, 466 U.S. at 689); *see also Garcia v. Burton*, 536 F. Supp. 3d 560, 602 (N.D. Cal. 2021) ("Some or all of the prosecutor's statements were almost certainly improper, and [defense counsel] may have succeeded in having them stricken if she had objected. But the comments do not rise to the level of 'egregious misstatements' to which

defense counsel must object or be found to have performed deficiently." (citations omitted)).

Accordingly, the Court finds that it was reasonably within defense counsel's wide range of permissible professional legal conduct to not object to the prosecutor's statements. *See Cunningham*, 704 F.3d at 1159. Petitioner has failed to provide any evidence opposing "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101). Therefore, Petitioner fails to meet the first prong of the *Strickland* standard.

### ii.    Prejudice

#### a.    Legal Standard

To establish that counsel's deficient performance prejudiced the defense, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Thus, a petitioner must demonstrate that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

#### b.    Application

Petitioner has not shown that the Court of Appeal was unreasonable in its denial of Petitioner's claim of prejudice as a result of ineffective assistance of counsel. The Court of Appeal provided nearly four full pages of evidence from the trial that "presented compelling, if not overwhelming, evidence of [Petitioner's] guilt," including video footage and eyewitness testimony of Petitioner committing the charged offense. (ECF No. 13-13 at 12–16.) Thus, the Court of Appeal reasonably determined that there was no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Featherstone v. Estelle*, 948 F.2d 1497, 1505–06 (9th Cir. 1991) (finding counsel's failure to object to improper closing argument did not prejudice

petitioner where other evidence supported a guilty verdict and the jury was told counsel's arguments were not evidence); *Demirdjian v. Gipson*, 832 F.3d 1060, 1074–75 (9th Cir. 2016) (finding that significant physical evidence offered against the defendant and a lack of plausible evidence negating the evidence demonstrates it "would have been reasonable to conclude [the petitioner] did not establish prejudice based on the evidence against him").

The Court of Appeal also reasonably disagreed with Petitioner's argument that prejudice was demonstrated by the fact that the jury in his prior trial was unable to reach a verdict. (*See* ECF No. 13-13 at 16–17.) The appellate court explained that the evidence presented at the two trials was materially different, as neither Petitioner nor the victim testified at the first trial. (*See id.* at 16.) The result of the first trial therefore does not demonstrate that Petitioner was prejudiced by defense counsel's failure to object to the prosecutor's remarks in the second trial. (*See id.* at 16–17.) Ultimately, the Court of Appeal's conclusion that Petitioner has not demonstrated that he suffered prejudice as a result of his trial counsel's failure to object to the prosecutor's statement in her closing argument was not an objectively unreasonable application of *Strickland*.

### c. Conclusion

Based on the foregoing, the state court's adjudication of Petitioner's ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law, nor is there any basis to find it is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the Court **RECOMMENDS** that habeas relief be denied as to Claim 2.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying Petitioner's habeas petition.

**IT IS ORDERED** that no later than **April 1, 2025**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to any objections shall be filed with the district court and served on all parties no later than **April 15, 2025**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  March 4, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge